1 – D~~elante Will~~(DOB: ~~89)~~                    DW-01

# STUDENT HEARING OFFICE OF THE DISTRICT OF COLUMBIA
## EXPEDITED REQUEST FOR MEDIATION/HEARING

➤ **This form shall be used to give notice to the District of Columbia Public Schools and/or a District of Columbia Public Charter School of parental disagreement with the identification, evaluation or educational placement of their child with a disability, or the timely provision of a free appropriate public education to that child, and to request a hearing and/or mediation regarding the same.**

➤ **This form must be sent to the Student Hearing Office of the District of Columbia, 825 North Capitol Street, N.E., 8th Floor, Washington, D.C. 20002. Fax number 202-442-5556**

---

Federal law requires that when a parent or representative requests mediation, it shall be offered at no cost to the parent. Mediation may be beneficial in your case. Please indicate your decision:

___ I REQUEST MEDIATION ___ I REQUEST MEDIATION AND A HEARING _X_ I REQUEST A HEARING

---

## STUDENT FOR WHOM MEDIATION/DUE PROCESS HEARING IS REQUESTED

Student Name: __D███ W███████__                    DOB: ___██/89___

Address: __███████ STREET, N.E.,████████, D.C. 20017__
Present School of Attendance: HIGH ROAD ACADEMY  Home School: UNKNOWN
                                                (Neighborhood school where child is registered)
**COMPLAINT IS MADE AGAINST:**    **DCPS, IDEAL PCS, and FEPC**
                                DCPS and/or D.C. Public Charter School (specify)

## INDIVIDUAL REQUESTING MEDIATION/DUE PROCESS HEARING

Name: __MS. MARION MURPHY__

Address: __5019-11TH STREET, N.E., ASHINGTON, D.C. 20017__

Phone: (H) __(202) 832-1048__ (W) _____ (Fax) _____

Relationship to Student: ___ Parent ___ Self _X_ Legal Guardian ___ Parent Surrogate ___ Public Agency

## PARENT REPRESENTATIVE/ATTORNEY/ADVOCATE (if applicable):

**Name:** **Fatmata Barrie, Esq. (Christopher Anwah's Law Office)** Phone: (W) (202) 626-0040

Address: __1003 K Street, N.W., Suite 500, Washington, D.C. 20001__ Fax: (202) 626-0048

---

Form 101                                                                    49

2 – D███████ W██████ (DOB: ██████/89)

1. You must indicate three (3) dates when you and your representative (if you have one) are available within the next twenty (20) days for mediation (if you are requesting mediation) and/or three (3) dates within the next 35 days (or 30 days if you represent a student enrolled at ETS or Rock Creek Academy) when you, your representative, and witnesses will be available to appear for a hearing (if you are requesting a hearing). Please indicate whether you are available in the AM, PM, or both on the identified dates.

Hearings: ___July 25, 2005_____  ___July 26, 2005_____  ___July 27, 2005_____
Mediation: _____  _____  _____

**FOR ALL DCPS STUDENTS, IF YOU PROPOSE DATES MORE THAN 35 DAYS FROM THE DATE OF YOUR REQUEST, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING OFFICER DETERMINATION WITH 45 DAYS OF THIS REQUEST. IN THE CASE OF A WAIVER, THE STUDENT HEARING OFFICE WILL CONTINUE TO USE BEST EFFORTS TO ISSUE A HEARING OFFICER DETERMINATION WITHIN 45 DAYS OF YOUR REQUEST (OR AS CLOSE TO 45 DAYS AS IS POSSIBLE).**

**FOR STUDENTS ATTENDING ETS OR ROCK CREEK ACADEMY, IF YOU PROPOSE DATES BEYOND THE 30-DAY PERIOD, YOUR SIGNATURE BELOW WILL INDICATE YOUR WAIVER OF YOUR RIGHT TO A HEARING WITHIN THAT PERIOD.**

Every effort will be made to accommodate your requested dates. Please be aware that proposed hearing dates which fall fewer than 21 days from the date of your request are difficult to accommodate. Your dates are most likely to be available if you propose hearing dates between 21 and 35 (or 30, for students enrolled at ETS or Rock Creek Academy) days from the date your request is received and docketed by the Student Hearing Office.

If none of your proposed dates are available, or if you fail to specify any dates, the Student Hearing Office will schedule your hearing for the first available date. Upon receipt of a Hearing Notice confirming the date of your hearing, you will have an opportunity to file a Motion for Continuance, if necessary, by using the form Motion attached to your Hearing Notice. *Please do not contact the Hearing Office by phone to request a continuance. Only the Hearing Officer assigned to your case is authorized to grant requests for continuances.*

Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled. Failure to report for the hearing may result in dismissal of this case, or in a default decision against you. Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing, with copies to the Special Education Student Hearing Office.

2. Special Accommodation Requests for Mediation/Due Process Hearing (please be specific):

    Interpreter
    ___ Foreign Language _____
    ___ Sign Language _____

Form 101

3 – D█████ W█████ (DOB: ████789)

Other _____
Special Communications _____
Special Accommodation for Disability _____
Other _____

3. In accordance with the Individuals with Disabilities Education Act (IDEA), please answer below:
   (You may attach additional pages to provide more information if needed.)

**Describe the nature of the problem**: Counsel for parent and student incorporates all previous IDEA violations in prior HODs, Settlement Agreements, Disciplinary Hearings, and Parent/Teacher Conferences.

**DCPS, IDEAL PCS & Friendship/Edison have failed to provide FAPE because it:**

1. Failed to provide student's triennials in a timely manner.
2. Failed to comply with the 03/16/05 HOD and to evaluate in all areas of suspected disabilities as recommended by the psychiatric evaluation. ie neuropsychological
3. Failed to provide the requested encounter tracker forms for all related services to determine compensatory education award owed to student.
4. Failed to complete initial evaluations and convene an MDT/IEP meeting to determine eligibility in a timely manner even though the grandmother has been requesting that DCPS provide her grandson with the services he needed since he was in the second grade when he started indicating signs of inattention.
5. Failed to provide special education services even though the grandmother provided evaluations to IDEAL PCS and the information from Maryland which indicated that he needed services.
6. Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP.
7. Failed to provide all appropriate personnel at the last MDT/IEP as mandated by the IDEA.
8. Failed to provide D█████ with the appropriate educational services, related services, and placement from the second grade until his matriculation to High Road because although it was evident that D█████ had academic difficulties DCPS, Ideal PCS and FEPC did nothing to provide him with the intensive services that he needed.
9. Failed to provide compensatory education for the present and past denial of FAPE because problems 1 to 8 and for not convening a placement meeting when the Village Learning Center closed after the 2003-2004 SY.

**Describe issues to be addressed at the mediation and/or hearing, with specificity:**
**Did DCPS, IDEAL PCS & Friendship/Edison fail to provide D█████ FAPE when it:**

1. Failed to provide student's triennials in a timely manner.?
2. Failed to comply with the 03/16/05 HOD and to evaluate in all areas of suspected disabilities as recommended by the psychiatric evaluation. ie neuropsychological?
3. Failed to provide the requested encounter tracker forms for all related services to determine compensatory education award owed to student?
4. Failed to complete initial evaluations and convene an MDT/IEP meeting to determine eligibility in a timely manner even though the grandmother has been requesting that DCPS

Form 101

provide her grandson with the services he needed since he was in the second grade when he started indicating signs of inattention?

5. Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP?

6. Failed to develop an appropriate IEP because he has never received the full time intensive services he so desperately needed and his current IEP does not include the recommendations from his current evaluations and it is not yet a full time IEP?

7. Failed to provide special education services even though the grandmother provided evaluations to IDEAL PCS and the information from Maryland which indicated that he needed services?

8. Failed to provide D█████ with the appropriate educational services, related services, and placement from the second grade until his matriculation to High Road because although it was evident that D█████ had academic difficulties DCPS, Ideal PCS and FEPC did nothing to provide him with the intensive services that he needed?

9. Failed to provide compensatory education for the present and past denial of FAPE because of issues 1 to 8 and for not convening a placement meeting when the Village Learning Center closed after the 2003-2004 SY?

**Describe relevant facts relating to the problem:**

Since the 2nd grade D█████ has had problems with inattention, retaining information and fidgeting in the classroom setting. He attended Rudolph Elementary school and had his academics were poor. In 2000 a psychological evaluation was conducted and it found that D█████ needed a "highly structured classroom environment with limited distractions." He attended school in MD briefly but upon his move back to DC, D█████ attended Backus MS for the 7th and 8th grades and IDEAL PCS and his grandmother provided the evaluation and documentation that he was in need of specialized services. However, the school did not provide those services nor did they convene a meeting to determine appropriate services. Therefore, he was denied FAPE and as a result, he is owed compensatory education.

Additionally, although he has been diagnosed with ADHD, the schools have not provided him with services to address that disability. In fact, none of his IEPs has accommodations for ADHD but it was discussed in the meeting notes. During his attendance at Village Learning Center the school knew that he needed someone to sit with him for him to complete his work. However, that issue was never addressed in his IEP. When Village Learning Center closed, DCPS did not convene a meeting to determine an appropriate placement. Instead, the grandmother had to look for a school. Although she identified FEPC, it was not the right environment for D█████ because he was not progressing and FEPC was not providing him with the intensity of services that he needed. Therefore, he was denied FAPE and as a result, he is owed compensatory education.

On 06/24/04, DCPS and parent's counsel entered into a settlement agreement in which DCPS was to fund independent evaluations and convene a meeting. Although parent's counsel completed the evaluations, forwarded them to DCPS, DCPS did not convene the meeting within the time frame required. As a result, parent's counsel notified DCPS office of compliance of the violation but again, no response from DCPS. A hearing was finally filed and an HOD issued on 03/16/05 in which DCPS

was ordered to place and fund De████ at High Road and convene a meeting within 30 days of his attendance at High Road. DCPS did not convene the meeting within the time frame required.

On 05/25/05, the parent's advocate attended an MDT meeting that was previously confirmed. However, DCPS' LEA representative did not attend but informed High Road Academy personnel to go forward with the meeting without her. The MDT/IEP meeting was to develop his IEP, discuss placement, and to discuss compensatory education, per HOD. Since the LEA was not present, DCPS did not issue a prior notice of placement, per the HOD or discuss compensatory education because Friendship/Edison and DCPS have failed to provide the advocate with the encounter tracker forms for all related services that were requested prior to De████ being placed at High Road Academy. Also, the psychologist and psychiatrist were not present at the MDT meeting to discuss and to interpret the psychological evaluation and the psychiatric evaluation. The decision was made that De████ needed a psycho-ed re-evaluation because it was expired. The team agreed that it was to be done within 30 days. However, that evaluation was not completed.

Although the grandmother has been trying to have services for De████, there have been other settlement agreements and HODs, including some from 2002 that DCPS has violated. Therefore, the grandmother is bringing forth this complaint to induce DCPS, IDEAL and FEPC to comply with IDEA, the HOD and provide De████ with an appropriate IEP and compensatory education for the past and present denial of FAPE.

**State how you would like to see the problem corrected**: Ms. Murphy is seeking the following relief: (1) DCPS, IDEAL and Friendship/Edison to fund an independent comprehensive evaluations for all suspected disabilities; (2) to convene the MDT/IEP meeting within five (5) days of receipt of the independent evaluations; (3) to develop an appropriate IEP; (4) to provide all appropriate related and transition services, including transportation; (5) to provide Advocate copies of all tracker forms for all related services to determine the amount of compensatory education owed to student; (6) to honor the "stay put" provision of the IDEA for De████ to remain at High Road Academy until all issues have been resolved; and, (6) DCPS to provide compensatory education for the past and present denial of FAPE.

_____
Signature of Applicant/Parent (Required)

_____June 30, 2005_____
Date (Required)

**MAIL, FAX, OR DELIVER APPLICATION TO:**
**Student Hearing Office of the District of Columbia**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002  FAX:  (202) 442-5556**

| *FOR OFFICE USE ONLY:* |
| --- |
| Case Number: _____ |
| Student ID#: _____ |
| |
| Form 101                          Revised 02/01/2003 |

Form 101

53



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

*Office of the Superintendent*
**Office of the General Counsel**
*825 North Capitol Street, N.E., 9th Floor*
202-442-5000 Fax # 20 2-442-5098
www.k12.dc.us

June 22, 2004

Christopher Anwah, Esq.
Attorneys and Counselors at Law
Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005

**PROPOSED SETTLEMENT**

**VIA FACSIMILE 202-347-7108**

**Subject: Due Process Hearing for D▆▆▆ W▆▆▆**
**DOB:    ▆▆▆789**

**Attending School: The Village Learning Center Public Charter School**
**Home School:**

Dear Mr. Anwah:

In lieu of the formal Due Process Hearing in the above-referenced matter, scheduled for Monday, June 28, at 11:00 a.m., the parties to this action, District of Columbia Public Schools (hereinafter DCPS), and parent's representative agree to resolve this matter pursuant to the following terms and conditions:

1. Parent/Counsel verifies that the student is a resident of the District of Columbia, has established residency, and has registered as attending or non-attending at their local school. If DCPS becomes aware subsequently to the executions of this settlement agreement that residency and/or registration has not been completed and/or established then any DCPS obligations under this agreement will not be completed until proof of registration and/or residency is provided to DCPS.

2. The Parent/Counsel verifies that the student's date of birth is September 20, 1989 that the attending school is The Village Learning Center Public Charter School.

3. Parent/Counsel agrees to cooperate fully with DCPS in the implementation of the terms of this settlement agreement. Any delay caused by the unavailability of the student, parent, or advocate as it pertains to testing, meeting dates, or compliance with the terms of this agreement will toll any deadlines herein by one day for each day of delay.

---

*Children First*

54

DCPS Office of the General Counsel
Page 2

    4. DCPS agrees to a fund independent evaluations, consistent with DCPS guidelines. Parent/counsel agrees that DCPS' liability is limited to costs not to exceed those specified in the Superintendent Directive Number 530.6, dated March 20, 2002. The evaluations DCPS agrees to fund are a psychiatric evaluation and a social history evaluation.

    5. DCPS agrees to conduct a MDT meeting within 15 business days of the receipt of the independent evaluation. DCPS agrees to update the student's IEP as warranted. Placement will be also be discussed and determined. For a public placement, a Prior Notice of Placement will be issued within 5 school days of the MDT meeting and for a private placement a PNOP will be issued within 30 calendar days of the MDT meeting. DCPS also agrees to discuss compensatory education, and if warranted a plan will be developed. Parent reserves the right to bring a hearing if the parent disagrees with the compensatory education plan developed.

    6. All meetings/conferences/evaluations shall be scheduled through counsel for the parent, via facsimile, at 202-347-7108.

    7. Both parties agree that execution of this agreement will occur when the signature of both parties has been affixed below and counsel of DCPS has received transmittal of the signed agreement.

    8. If for some reason DCPS is unable to comply with this agreement as of result of unforeseen circumstances beyond its control, DCPS will request that Parent/Counsel agree to extend the deadlines or negotiate new timelines, whichever appropriate. Parent/Counsel will not unreasonably deny any such request for extension/renegotiation.

    9. Parent/Counsel agrees to contact DCPS Office of Mediation & Compliance personnel when there has been a failure to comply with the terms incorporated in this agreement in order to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.

    10. This agreement is in full satisfaction and settlement of all the claims contained in the pending hearing request, and including all claims that the parent now asserts or could have asserted as of the date of this agreement in relation to special education issues.

    11. Parent/Counsel agrees to accept reasonable attorney fees not to exceed Four Thousand ($4,000.00) Dollars, as full and final payment of the attorney fees and related costs incurred in this matter. Payment of the specified amount is contingent upon the submission of a certified, itemized invoice conforming to the DCPS attorney fee guidelines.

    12. Parent/Counsel agrees that the hearing request that is subject of this Agreement will be immediately withdrawn and the written evidence of such withdrawal is required before any invoices will be processed.

Sincerely,

Jack L. Schreibman
Attorney Advisor

**Children First**

55

06/24/2004 08:30 FAX 202 442 5098   OFF. OF GENERAL COUNSEL   ☒003
OFF. OF GENERAL COUNSEL   ☒004/004

DCPS Office of the General Counsel
Page 3

Agreed to: _____   Date _6/24/04_
Christopher Anwah, Esq.
Counsel for Parent

Agreed to: _____   Date _6/24/04_
Jack Schreibman, Esq.
Attorney Advisor

*Children First*

# EDI, Inc.

| | |
|---|---|
| Educational Diagnostics Institute, Inc.<br>1401 New York Ave., NW, Suite 700<br>Washington, DC 20005  (202) 347-9101 | Sandra R. Saulter, Ph.D.<br>Licensed Clinical Psychologist |

## COGNITIVE PSYCHOLOGICAL EVALUATION

**Name:** William, D_____          **School:** Academy for Ideal Education
**Date of Birth:** ___/19/1989       **Grade:** Seventh
**Date of Evaluation:** 04/19/02     **Date of Report:** 05/06/02
**Chronological Age:** 12 years, 6 months

### REASON FOR REFERRAL AND BACKGROUND INFORMATION:

D_____ is a 12-year-old African-American male, who was referred for a psychological evaluation to determine his current level of cognitive functioning. He resides in Northeast Washington, D.C. with his legal guardian and paternal grandmother, Marian Murphy. An aunt and cousin also reside in the home. D_____ is a seventh grader at Academy for Ideal Education in Washington, D.C. The record reflects that he attended Berkshire Elementary School in Prince George's County prior to attending Ideal. A Section 504 Plan was developed for him at Berkshire "to address academic concerns affected by ADHD." The plan included his asking for help when needed, seeing the guidance counselor before and after school to check assignments, and his parents checking his homework assignment notebook and reviewing his homework at home. The plan also included his being accommodated in the classroom with "special seating and an additional support person."

*Interview with Guardian* - Ms. Marian Murphy was interviewed by this examiner at Educational Diagnostics Institute, Inc. (EDI) on April 19, 2002. Ms. Murphy reported that she has had legal custody of D_____ since he was five or six years old. However, he has been living with her since he was about three months old. He stayed with his mother briefly when he was in the second grade, and half of the fifth and sixth grades. Ms. Murphy indicated that D_____ has seasonal allergies and takes Claritin. His birth was without complications, but he was exposed in the uterus to crack cocaine. In addition, both mother and father were using crack cocaine at the time of his conception. Ms. Murphy also reported that D_____ was a "little slow" at walking and talking. He did well in kindergarten and first grade. He started to have problems in the second grade with inattention, retaining information, and keeping still in the classroom. He attended Berkshire Elementary School in Forestville, Maryland in the sixth grade. There, "they" threatened to retain him, but Ms. Murphy took him back from his mother, worked with him, and he managed to "pull up" his grades. Although he resided with Ms. Murphy in Washington, D.C. for the remainder of the sixth grade, the administration at Berkshire allowed him to remain there (in Maryland) until the school year was completed.

Ms. Murphy indicated that D_____ is not getting any special accommodations at Ideal, and this is a violation of his Section 504 Plan. His teachers at Ideal do not think that he

DW-03

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):
W███, D████; DOB: ████89

Page 2 of 7

has a problem or needs special accommodations. Ms. Murphy stated that she is "extremely" dissatisfied with Ideal. She feels that D████ is not getting what he needs academically, and she alluded to his physical safety being in jeopardy at Ideal. She shared that D████ has been physically injured more than once at Ideal, and she was not informed immediately of his injuries. Ms. Murphy also expressed that she is concerned about D████ "short attention span, inability to remember all steps in verbal instruction, and social immaturity." In regard to the latter, she explained that he prefers to play with younger children, and he does not fight back when kids beat up on him at school. Ms. Murphy also indicated that D████ is "an inward person;" it is hard for him to talk about what is bothering him.

Ms. Murphy was administered the CPRS-RS, a parent-report questionnaire, as a means of obtaining more precise information regarding D████ behavior. He scored in the clinical range on scales assessing inattention, hyperactivity, and symptoms of ADHD per se. Specially, he attained T scores of 43 on the Oppositional Scale, 71 on the Cognitive Problems/Inattention Scale, 77 on the Hyperactivity Scale, and 72 on the Conners' ADHD Index Scale. T scores at and above 65 are considered clinically significant. Ms. Murphy reported that D████ has a short attention span, and is easily frustrated and distractible. He has problems organizing his work, completing tasks or schoolwork, and concentrating in class and on tasks that require sustained mental effort. He also fidgets with his hands and feet, and is disorganized at school. Ms. Murphy also disclosed that D████ bites his fingernails. His pediatrician has referred him to a psychiatrist to determine if he is "ADHD."

## TESTS ADMINISTERED AND DATA SOURCES:
### Wechsler Abbreviated Scale of Intelligence (WASI)
**Verbal Subtests**
> Vocabulary TS = 49; SS = 10
> Similarities TS = 42; SS = 8

**Performance Subtests**
> Block Design TS = 57; SS = 12
> Matrix Reasoning TS = 60; SS = 13

Verbal IQ 93 (average); Performance IQ = 114 (high average); Full Scale IQ = 103 (average)

### Cognitive Assessment System (CAS)
**Planning (PLAN) Processing Scale Subtests**
> Matching Numbers SS = 10
> Planned Codes SS = 8

**Simultaneous (SIM) Processing Scale Subtests**
> Nonverbal Matrices SS = 8
> Verbal-Spatial Relations SS = 8

**Attention (ATT) Processing Scale Subtests**
> Expressive Attention SS = 10
> Number Detection SS = 7

**Successive (SUC) Processing Scale Subtests**
> Word Series SS = 11
> Sentence Repetition SS = 10

PLAN SS = 94 (average); SIM SS = 88 (low average); ATT SS = 91 (average); SUC SS = 108 (average); FS SS = 92 (average)

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):
W████ D████, DOB: ████/89

(Standard scores for the Scales and Full Scale are set at a mean of 100 and standard deviation of 15.)

**Wide Range Achievement Test-Revision 3** (WRAT3)
    Reading (word recognition) Test SS = 103; GE = Eighth
    Spelling Test SS = 103; GE = Seventh
    Arithmetic Test SS = 90; GE = Fifth
**The Beery-Buktenica Developmental Test of Visual-Motor Integration** (VMI)
    Developmental Age Equivalent = 11 years, 3 months; SS = 96
**Conners' Parent Rating Scale-Revised Short** (CPRS-RS)
    Oppositional TS = 43
    Cognitive Problems/Inattention TS = 71
    Hyperactivity TS = 77
    Conners' ADHD Index TS = 72
(T scores at and above 65 are clinically significant.)
Clinical Interview and Observation of Test Behavior
Interview with Guardian
Record Review
    PG County Public Schools Section 504 Accessibility Plan – 10/10/00
    PG County Public Schools Psychological Report – 5/2/00

**CLINICAL INTERVIEW AND OBSERVATION OF TEST BEHAVIOR:**
D████ was seen by this examiner at Educational Diagnostics Institute, Inc. (EDI) on April 19, 2002. He was accompanied to EDI by his paternal grandmother and legal guardian, Marian Murphy. Testing occurred over a period of approximately three and one-half hours. Separation for testing was uneventful. D████ was noted to be properly dressed and groomed. His fingernails, however, were badly bitten to the quick. He was also noted to have a bruise on the right side of his forehead. Gross and fine motor functioning appeared adequate. He demonstrated right-handedness.

A clinical interview was conducted with D████ before the administration of test instruments. A functional rapport was easily established. D████ was friendly and responsive to inquiry. On request, he gave correct identifying data. In response to inquiry, he reported that he lives with his grandmother, aunt and cousin. He likes to build things and wants to be an architect when he grows up. His best friend is George, a nine-year-old boy who lives in the neighborhood. D████ also reported that he does not like attending Ideal Academy. He stated that other students pick on him and fight him. When asked about the bruise on his forehead, he explained that he acquired the bruise after being tripped by another student at school yesterday, causing him to fall. Thus, a fight resulted between him and the other student. Since D████ did not start the fight, he did not get suspended. D████ also disclosed that his favorite subject is science. His easiest subject is physical education. His hardest subject is math. He does not like music. In spite of his reporting that other students fight and pick on him at school, he indicated that he has no problems at school.

D████ revealed that he feels "good" about himself and does not want to change anything about himself. He did not admit to any worries or concerns. He also did not admit to any problems eating/sleeping, any suicidal/homicidal ideation, or any visual/auditory hallucinations. He shared that he feels like fighting someone when he

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):
W█████, D█████; DOB: ████/89

gets "very mad or frustrated." However, he would not actually start a fight with anyone because he was angry. What makes him angry is not being able to do his schoolwork well, especially math. When asked what he would wish for if he had three wishes, he replied, "I wish for my own car, a big house, and to live a happy life." D█████ speech was clear. He did not evince any loose or disassociative thought content. He was oriented to person, time and place. He gave direct eye contact.

D█████ was cooperative throughout testing. He exhibited no overt signs of off-task behavior, distractibility or hyperactivity. He maintained an appropriate level of attention and motivation. It is believed that the overall results of the administered accurately reflect his cognitive functioning at the time of testing.

## ANALYSIS OF TEST RESULTS:
### Cognitive Functioning - WASI Findings
D█████ was administered the WASI to obtain an estimate of his general intelligence. He attained a Verbal IQ of 93, a Performance IQ of 114 and a Full Scale IQ of 103, indicating that he functions overall in the "average" range of intelligence. However, his uneven cognitive pattern makes it difficult to summarize his overall intellectual functioning by a single score. His subtest scaled scores range from high average (13) to average (8), and the significant differential of twenty-one scaled points between the Verbal and Performance IQs, in favor of the latter, suggests that his nonverbal (visual skills) are better developed overall than his verbal (auditory) skills. In the Verbal realm, he displayed average ability on subtests measuring word knowledge (Vocabulary SS = 10), and verbal abstract reasoning and concept formation (Similarities SS = 8). In the Performance realm, high average ability was displayed on subtests measuring nonverbal fluid reasoning (Matrix Reasoning SS = 13), and nonverbal abstract reasoning and visual motor perception/ integration (Block Design SS = 12).

### Cognitive Functioning - CAS Findings
The CAS was administered to D█████ to obtain a more comprehensive assessment of his cognitive abilities. This instrument goes beyond the traditional Wechsler test and concept of general intelligence by identifying specific abilities or cognitive processes that may impact on learning. On the CAS, D█████ earned a Full Scale standard score of 92, which falls in the "average" range. He ranked at the 30th percentile in overall cognitive processing ability in comparison to same-aged peers. He earned scaled scores that ranged from average to low average on the four separate scales comprising the Full Scale. Due to significant variability occurring among the four PASS Scales, the Full Scale standard score of 92 is not the best representation of each PASS scale standard score. Specifically, D█████ attained a Planning (PLAN) standard score of 94, a Simultaneous processing (SIM) standard score of 88, an Attention (ATT) standard score of 91, and a Successive processing (SUC) standard score of 108.

D█████ performed as well as 34% of same-aged peers in the normative sample on measures of planning processing. He was required to match numbers and codes within a prescribed amount of time. In order to be successful, he had to devise a strategy (i.e., plan) to solve the problem, apply the plan, and modify the plan as needed. The "average"

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):
Williams, Delonn; DOB ██/██/89

ability which he displayed on the PLAN Scale (standard score = 94) reflected the generation and use of efficient and effective strategies for problem solving and self-regulation.

Successive processing ability was measured on subtests that required information to be arranged in a specific linear order where each step was related only to the previous one. D████ displayed average skills on the SUC Scale. He performed as well as 70% of same-aged peers in the normative sample. Since the SUC Scale standard score of 108 is significantly higher than the mean of 95.3 of the four PASS standard scores, this indicates that successive processing is a relative cognitive strength for D████. This type of processing is important when it is necessary to keep information in its correct order. It is involved in rote memory, and in the breaking down or analyzing of information into an ordered sequence. D████ "average" performance on the SUC Scale suggested that he is able to hold sounds or words in sequence and follow step by step simple to complex verbal instruction well.

Attentional processing was measured on subtests that required D████ to detect and selectively attend to particular stimuli while avoiding responding to irrelevant competing stimuli. He performed as well as 27% of same-aged peers in the normative sample on the ATT Scale (standard score = 91). On the two core subtests comprising the ATT Scale, he attained a standard score of 10 on the Expressive Attention subtest and 7 on the Number Detection subtest. On the former subtest, his task was to identify the color of ink in which certain words were printed. For example, the word "green" was printed in red ink. On the latter task, his task was to visually scan an array while underlining target numbers printed in a particular font. His overall "average" performance on the ATT Scale illustrated that he is capable of adequately sustaining his attention and avoiding distracting stimuli in the classroom.

Simultaneous processing ability was measured on subtests that required D████ to integrate several pieces of information and comprehend them as a group or whole using both verbal and nonverbal content. This type of processing is important when it is necessary to see or comprehend things as a whole. It is seen in tasks that involve spatial skills like using blocks to build a design, seeing patterns in numbers, seeing a group of letters as a word, words as a whole, a sentence as part of a paragraph, categorizing words, and in reading comprehension. D████ lowest standard score was attained on the SIM Scale (SS = 88). Since he was able to perform as well as 21% of same-aged peers on subtests comprising this scale, his "low average" performance suggested that simultaneous processing is a relative weakness, but not a cognitive deficit, for him. He may have some difficulty in the classroom solving problems that demand complex integration of information as well as performing the following tasks involving simultaneous processing:

> Recognizing sight words quickly
> Interpreting sentences, or passage meaning
> Seeing the shapes of words or working with spatial tasks
> Seeing patterns in text or math problems
> Comprehending math word problems

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):

Page 6 of 7

Within, D____, DOB: ____89

## Perceptual-Motor (Visuospatial) Functioning

D____ demonstrated visual-motor perception/integration and graphomotor skills within chronological age expectancy on the VMI. He attained a developmental age equivalent of 11 years, 3 months and a standard score of 96. He ranked at the 39th percentile in comparison to same-aged peers. His task was to copy two-dimensional geometric shapes using paper and pencil. He exhibited an intermediate pencil grip and copied the designs with ease. The few errors he made were due to carelessness as opposed to sensory motor feedback problems.

## Academic Functioning

D____ was administered the WRAT3 to obtain an estimate of his achievement in basic academic areas. He scored at eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic. These grade equivalents are commensurate with standard scores of 103, 103 and 90, and percentile ranks of 58, 58 and 27 in these academic areas, respectively. In consideration of D____ age and current grade placement, he is achieving below grade expectancy in basic arithmetic. His weaknesses in arithmetic are most likely related to his relative weaknesses in simultaneous processing. If one were to use the Performance IQ of 114 as a fairer estimate of D____ intellectual functioning than the Full Scale IQ of 103, then a severe discrepancy exists between intellectual functioning and achievement in basic arithmetic. Thus, he meets the criteria as a specific learning disabled student in accordance to Public Law 105-17 (IDEA). D____ also reported that math is his hardest subject, and it causes him much anger and frustration.

## SUMMARY AND RECOMMENDATIONS:

Current psychometric findings indicate that D____ has uneven cognitive skills ranging from high average to low average. He attained a VIQ of 93, a PIQ of 114 and a FSIQ of 103 on the WASI, and a Full Scale standard score of 92 on the CAS. On the four PASS Scales comprising the Full Scale of the CAS, successive processing was found to be a relative strength, and simultaneous processing a relative weakness. Specially, he attained a standard score of 94 on the PLAN Scale, 88 on the SIM Scale, 91 on the ATT Scale, and 108 on the SUC Scale. D____ was found to have age-appropriate visual-motor perception/integration skills. On the VMI, he earned a developmental age equivalent of 11years, 3 months and a standard score of 96. With the exception of arithmetic, D____ basic academic skills were found to be at or above grade expectancy. He scored at the eighth grade level in reading (word recognition), seventh grade level in spelling, and fifth grade level in arithmetic.

Findings from the CPRS-RS, a parent-report questionnaire, suggested that D____ exhibits behaviors that are consistent with an attention deficit disorder. He scored in the clinically significant range on scales of Cognitive Problems/Inattention, Hyperactivity, and Conners' ADHD Index. In October 2000, Prince George's County Public School provided him with a Section 504 Plan "to address academic concerns affected by his ADHD." His paternal grandmother and legal guardian, Marian Murphy, reported to this examiner that his current pediatrician has referred him to a psychiatrist to rule out ADHD. It is important to note that D____ did not exhibit any overt signs of an attention

COGNITIVE PSYCHOLOGICAL EVALUATION (continued):
W~~illiam D~~e~~lavar~~ DOB: ~~07/00~~/89                                                    Page 7 of 7

deficit disorder during testing. In addition, he scored in the "average" range in attentional processing. Therefore, more extensive testing is needed before this examiner can rule on a clinical diagnosis of ADHD.

The overall findings from this cognitive psychological evaluation concur with the following DSM-IV multiaxial diagnosis:

Axis I:      315.1  Mathematics Disorder
Axis II:     V71.09 No Diagnosis on Axis II
Axis III:    Seasonal Allergies
Axis IV:     Educational problems: academic weaknesses in math, possible problems
             with inattention, disorganization, and difficulty completing assignments
             Problems with primary support group: H/O maternal and paternal drug
             abuse
Axis V:      GAF = 70 (current)

## Recommendations:

➢ D~~elaware~~ should be referred to special education for placement in an appropriate school program that can address his academic needs. He requires academic remediation in math, and behavior management as needed in the classroom.

➢ D~~elaware~~ should receive group psychosocial counseling at school once weekly for 45 minutes to enhance his social skills and aid him in developing age-appropriate friendships.

➢ D~~elaware~~ should be referred for a neuropsychological or psychiatric evaluation to further investigate his reported problems with inattention.

Prepared by:   Sandra R. Saulter, Ph.D., Clinical Psychologist

*Sandra R. Saulter, Ph.D.*

Licensed/District of Columbia
Registrant/National Register of Health Service Providers in Psychology

DW-04

## PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
### UPPER MARLBORO, MARYLAND   20772

CONFIDENTIAL

### DEPARTMENT OF PSYCHOLOGICAL SERVICES

CONFIDENTIAL

PSYCHOLOGICAL REPORT

[   ] EVALUATION    [ X ]  ASSESSMENT  [   ]  REEVALUATION

NAME: _D_____ W_____  STUDENT #:000382703  SCHOOL: Berkshire Elementary

ADDRESS: _____, Forestville, MD   2074‾

DATE OF BIRTH: ___/89  AGE: 10-7    SEX:  M     GRADE:  5

PARENT/GUARDIAN:  __Barbara Wilkins_____

HOME PHONE:_____  WORK PHONE(s): MOTHER: 301-853-3102 FATHER: _____

DATE OF REFERRAL: 5/2/00  CURRENT ASSESS: 5/2/00  PRIOR ASSESS:  N/A

PSYCHOLOGIST:  Shannon Holmes, Psy. M.  OFFICE: OHSDC  PHONE: (301)749-4384

REASON FOR REFERRAL:
[ ]  Appropriate Placement/Program
[ ]  Behavioral/Emotional Concerns
[ ]  Academic/Developmental Concerns
[ ]  Re-evaluation
[X]  Other: Attentional Concerns

TECHNIQUES UTILIZED:
[X]  Review of records
[ ]  Observation
[ ]  Interview
     Consultation with:
[X]  Parent
[X]  Teacher, Counselor, Principal
[ ]  Other: _____

PSYCHOMETRICS:
[ ]  WISC-III
[ ]  WAIS-R
[ ]  WPPSI-R
[ ]  S-Binet, 4th Ed.
[ ]  McCarthy
[ ]  K-ABC
[ ]  Other: _____

PROJECTIVES:
[ ]  Drawings
[ ]  Rorschach
[ ]  TAT or CAT
[ ]  Roberts
[ ]  Incomplete
      Sentences
[ ]  Other: _____

RATING SCALES:
[X]  ADHD
[ ]  Behavior
[ ]  Self
[ ]  Social/Emotional
[ ]  Other: _____

ADAPTIVE BEHAVIOR SCALES:
[ ]  AAMD/AAMR
[ ]  Vineland
[ ]  Other:_____

SUPPLEMENTAL TESTS:
[ ]  Bender
[ ]  VMI
[ ]  VADS
[ ]  Other: _____

STUDENT WAS EVALUATED IN HIS/HER PRIMARY LANGUAGE: [X] YES, English [ ] NO
                                                    See Narrative
THE INSTRUMENTS SELECTED ARE VALID FOR THIS STUDENT: [X] Yes  [ ] No- See
                                                                  Narrative

P-44  (Revised 12/96)

64

DW-04



W█████, D██████
███-09

# PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS
## UPPER MARLBORO, MARYLAND  20772
### PSYCHOMETRIC SUMMARY

CONNERS' RATING SCALE - REVISED (Long Form)

| Scales | Parent | Teacher |
|---|---|---|
| Oppositional | Average | Poss. Significant |
| Cognitive Problems | Poss. Significant | Significant |
| Hyperactivity | Average | Borderline |
| Anxious-Shy | Average | Borderline |
| Perfectionism | Average | Average |
| Social Problems | Average | Average |
| Psychosomatic | Average | N/A |
| Conners' ADHD Index | Average | Significant |
| Restless-Impulsive | Average | Poss. Significant |
| Emotional Lability | Average | Average |
| Global Index - Total | Average | Borderline |
| Inattentive | Average | Significant |
| Hyperactive-Impulsive | Average | Borderline |
| DSM-IV - Total | Average | Significant |

ADDITIONAL TESTS ADMINISTERED:  None

Recommendations in this report will be transmitted to the appropriate school
team for consideration regarding implementation.

PSYCHOLOGICAL ASSESSMENT REPORT PART II:  NARRATIVE

Name:    D██████ W███████
DOB:     ████-89
School:  Berkshire Elementary School

## REASON FOR REFERRAL:

D███████ is a ten-year-old fifth grader attending Berkshire Elementary School.  Presently, D███████ has been referred to the multidisciplinary team to investigate the possibility of attentional issues which may be negatively impacting his academic performance.  His teacher reported that D███████ had not completed homework or classwork assignments making it difficult to assess his academic progress.  Of positive note, she indicated that D███████ is artistic and willing to help others with physical activities such as cleaning, running errands and moving furniture.  She also rated his oral expression and reading comprehension as areas of relative strength.  D███████ mother appeared to share many of the teacher's concerns.  She stated that D███████ is receiving failing grades and appears to have a short attention span at school, although he obeys adults at home.

## BACKGROUND INFORMATION:

According to the parent questionnaire completed with D███████ mother as the informant, D███████ is the youngest of three children.  He lives with his mother, stepfather and siblings.  No serious problems were experienced during the pregnancy or delivery and all developmental milestones were achieved within expected timeframes.  D███████ mother rated his general health as *excellent*.  She described D███████ interests as skateboarding and cars and stated that he is a good reader. Additionally, she endorsed the following social-behavioral characteristics as describing D███████:

enjoys reading; has a short attention span; has a difficult time with paper and pencil tasks; avoids homework; is overactive; tells lies; is easily influenced by others sometimes and is liberal.

## RATING SCALE DATA:

Due to reports of inattention and problems with organization, D███████ mother and his classroom teacher were asked to complete the Conners' Rating Scales - Revised, Long Form, a screening tool for Attention Deficit Hyperactivity Disorder (ADHD).  Scores indicate that the respondents differ in their perceptions of many of D███████ behaviors.

According to the parent rating scale, scores fell within the Average range in all assessed areas with the exception of the Cognitive Problems scale.  The corresponding score was described as Possibly Significant.  The teacher form also indicated serious

W██████, D████████
████-89                                                                                    4

concerns in this area with a significantly elevated score.
Cognitive problems are defined on the Conners' Rating Scale as
learning difficulties, organizational, attention and
concentration problems, and difficulty completing schoolwork.
D████████ mother endorsed the following items as being *pretty
much* or *very much true* of him: fails to give close attention to
details or makes careless mistakes in schoolwork, work, or other
activities; has difficulty doing or completing homework; avoids,
expresses reluctance about, or has difficulties engaging in tasks
that require sustained mental effort (such as schoolwork or
homework); fails to complete assignments; has trouble
concentrating in class; and needs close supervision to get
through assignments. Frequently, students with attention
problems also receive high scores on this scale as often
inattention negatively impacts academic performance.

In contrast, the teacher rating scale reflected serious
concerns across a number of areas including the following:
inattention, Conners' ADHD Index, and DSM-IV Total. These
results suggest that at school, D████████ is easily distracted, has
difficulty concentrating, often appears restless, acts
impulsively and exhibits many problematic behaviors, in general.
Children with high scores on the <u>Inattention</u> scale tend to have
trouble concentrating on tasks which require sustained mental
effort. Inattention is a central feature of ADHD.

The <u>Conners' ADHD Index</u> measures the presence of ADHD
symptoms. D████████ classroom teacher rated the following items
as being *very much true* of D████████: fails to finish things he
starts; is inattentive, easily distracted; only pays attention to
things he is really interested in; and distractibility or
attention span is a problem. An elevated score on the <u>DSM-IV -
Total</u> scale indicates an unusually high correspondence to DSM-IV
criteria for combined Inattention and Hyperactive-Impulsive Type
ADHD. In addition, D████████ teacher endorsed five of nine items
which correspond to a diagnosis of Attention Deficit
Hyperactivity Disorder, Predominantly Inattentive Type.

Potentially serious concerns were reported by D████████
classroom teacher on the <u>Restless-Impulsive</u> and <u>Oppositional</u>
scales. The corresponding scores were described as Possibly
Significant indicating that at school, D████████ often displayed
high levels of restlessness, impulsivity and inattention and is
likely to break rules, have problems with authority, and become
more easily annoyed and angered than other children his age.

It is not unusual to get disparate scores on some scales
from multiple respondents. There are a number of possible
reasons for this. The child's behavior may actually be different
from one context to the next; one respondent's tolerance level
for problem behaviors may be higher or lower than the other's; or

the respondents may use different behavior management
strategies with varying degrees of effectiveness. Inconsistency
of reporting could also indicate that some of D████████ problems
are exacerbated by the behavioral, academic, and/or social
demands of an academic setting. Based on his academic history
and current rating scale data, it is possible that D██████ is
experiencing some attentional difficulties which may be
negatively affecting his academic performance.

SUMMARY:

     D██████ is a ten-year-old fifth grader at Berkshire
Elementary School. Due to reports of inattention and
disorganization, a screening was conducted to rule out the
presence of Attention Deficit Hyperactivity Disorder. Results of
behavior rating scales and academic history are suggestive of the
presence of Attention Deficit Hyperactivity Disorder,
Predominantly Combined Type.

RECOMMENDATIONS:

1.   The results of this evaluation will be forwarded to the
     multidisciplinary team to determine eligibility for
     instructional modifications.

2.   D████████ mother may wish to consult with her pediatrician
     or other health professional with expertise on the diagnosis
     and treatment of Attention Deficit Hyperactivity Disorder.

3.   Teachers should provide a highly structured classroom
     environment and limit distractions. D██████ should be
     seated near the front of the room and away from the window,
     door, and other high traffic areas.

4.   Teachers should be sure they have D████████ full attention
     before giving clear, concise instructions or assigning work.
     They can check for understanding by having D██████ repeat or
     rephrase directions. Also, it may be helpful to give
     D██████ periodic reminders to stay on task.

5.   Due to D████████ inattention and distractibility, academic
     assignments may need to be modified, such as breaking larger
     tasks down into smaller, more manageable steps. D████████
     progress should be monitored frequently.

6.   Teachers may wish to use a timer or other incentives to
     challenge D██████ to complete more of his assignments in
     class. In addition, D██████ should be encouraged to use his
     agenda book to record homework assignments. His agenda book
     should be reviewed regularly by his teachers and parent to
     help increase task completion.

W███████, D██████
████-89

6

7.  Individual and/or group counseling as they are available in
    school may be useful for D███████ to help improve his
    motivation and decision-making skills.

Shannon Holmes    6-20-00
Shannon Holmes, Psy. M.    Date
Certified School Psychologist





*Making a Difference*

## *INTERDYNAMICS, INC.*
### *Evaluations and Therapy*
#### Psychiatric Evaluation

**Student Name:**  D███ W██████
**Date of Birth:**  ██████████, 1989
**Date of Report:** July 23, 2004
**Address:**  5███████████████
             Washington, DC 20017
**Telephone:** (H)████████████
**Examiner:**  Spencer Johnson, MD
             Psychiatrist

### Presenting Problems:

D█████ was referred for a psychiatric evaluation to assess emotionality and determine appropriate treatment modes, related to academic achievement and social adjustment.

D█████ symptoms and behavioral difficulties included the following:  poor academic progress, inattentiveness, self-isolation and avoidant behaviors.

The following report was reviewed as a part of this Psychiatric Evaluation:  A Cognitive Psychological Evaluation dated May 6, 2002 by Dr. Sandra Saulter.

### Social History:

D█████ and his paternal grandmother, Ms. Marion Murphy, provided the historical information for this evaluation.  He resides with his grandmother, aunt and younger cousin and has two older siblings who reside on their own.  Ms. Murphy has had legal guardianship of D█████ since he was two years old as a result of his mother's inability to care for him.  According to Ms. Murphy, when D█████ mother, Barbara Jean Wilkins, had him her parents were unwilling to help care for him.  Ms. Wilkins was unable to establish a strong relationship with D█████ prior to her death of breast cancer in August 2003.  Although they visited at times, Ms. Murphy states that the visits were short and when allowed to live with his mother for six month intervals, his behavior became increasingly negative.  Ms. Murphy took D█████ to see his mother frequently when his mother's condition became more serious.  While D█████ has a very good relationship with his immediate family, he has not established the type of bond with his father that Ms. Murphy feels is appropriate.  According to Ms. Murphy, Kevin Stevenson, D█████ father, has always treated him more like a brother than a son and has not made enough effort to bond with him.  Equally important is the history of substance abuse by both of D█████ parents in his early years of development.  Mr. Stevenson eventually ceased the use of drugs and entered into the Navy where he has made a change in his life.  Significantly, Ms. Murphy states that he now puts a little more effort into spending time with D█████.

According to Ms. Murphy, D█████ was carried full term and delivered vaginally.  She states that both parents were using crack cocaine during the pregnancy, which could have led to his delayed

developmental milestones. D███ walked and put two words together after the age of two years old. He also had a history of ear infections that did not require surgery.

## Educational History:

A Cognitive Psychological Evaluation written by Dr. Saulter on May 6, 2002 indicated that D███ was responsive and cooperative during testing. He was diagnosed with a Mathematics Disorder and advised that further testing would be necessary rule out a prior diagnosis of ADHD. Dr. Saulter recommended special education services focusing on math, a behavioral management plan, psychosocial counseling and either a psychiatric or neuropsychological evaluation.

## History of Present Illness/ Psychiatric History:

D███ is a 14 year-old boy who will be attending Friendship Edison Charter School as a tenth grader. According to Ms. Murphy, he was diagnosed with ADHD in the 2nd grade but was not medicated at that time. He had difficulty with remaining focused, would leave his seat frequently to do whatever he chose, and wouldn't complete assignments. Significantly, he displayed severe problems while in the 2nd and 6th grades when he was allowed to reside with his biological mother for short periods of time. According to Ms. Murphy, the environment and activities that took place in Ms. Wilkins household caused him to act out negatively in school. While in the 6th grade, teachers complained that he had no supplies, wasn't completing classroom or homework assignments. Subsequently, Ms. Murphy was advised that he may be retained in the 6th grade so she removed him from his mother's house. She worked diligently with him in completing and understanding his schoolwork and thus he was promoted to the 7th grade. However, Ms. Murphy noticed that D███ had been more introverted since returning from his mothers' and she is unaware of what caused this behavior. Ms. Murphy stated that after the 6th grade, he was no longer allowed to go over to his mothers' house. He is currently seeing a Psychiatrist to deal with his feelings of loss and self-isolation.

Currently, Ms. Murphy reports that D███ is picked on by his peers and refuses to fight back; avoids completing math and english class assignments. He has been receiving special education services since the 7th grade while in a general education setting. D███ refuses to raise his hand to ask questions and will not move to the front of the class. Significantly, he was suspended this year due to leaving the school building.

According to D███, he enjoys science but finds math very difficult. He further stated that he does not complete classroom or homework assignments because he doesn't understand the material and there are too many instructions for math. D███ feels that special education services are helping just a little. He enjoys playing basketball and football and would like to go to college for architecture.

## Mental Status Examination:

D███ is a tall African American boy who was dressed appropriately. He was cooperative and maintained good eye contact. He was alert and oriented to person, place and time. There was no evidence of motor retardation. His mood was good and affect was appropriate. He denies having suicidal or homicidal ideations. There was no evidence of persecutory trends. He denies feelings of passive alien control. He did not evidence obsessive or compulsive behaviors. He has phobias of snakes. There was no evidence of depressive symptoms. He denies having auditory or visual hallucinations. There was no evidence of hypochondriacal trends or somatic delusions. His speech was normal in rate and rhythm. There was no evidence of loosening of association. He has good insight and cognitive judgment. His memories were intact remembering three out of three things in five minutes. His general fund of

knowledge is average.  His concentration was good.  He performed serial 7's with one mistake and spelled the word "world" backwards.

**Diagnosis:**

Axis I                 314.0 History of Attention Deficit Hyperactivity Disorder
                                315.9 Learning Disability
                                300.4 Dysthymic Disorder

Axis II                Deferred

Axis III             Seasonal Allergies

Axis IV            Moderate (early separation from mother, abandonment from father, death of mother and academic difficulties in math)

Axis V              GAF (65)

**Discussion and Recommendation:**

D▉▉▉▉ W▉▉▉▉ is a 14 year-old African American male who is going into the 10th grade.  He arrived to this testing site with his paternal grandmother, Ms. Murphy.  He lives with his grandmother, aunt and cousin.  He has been living with his grandmother since he was three months old but spent some time living with his biological mother.  His mother died last year of breast cancer.  During the interview he didn't exhibit any signs of hyperactivity.  He admits to having problems with math.  He has been taking Concerta 54 mgs daily, which might improve his concentration.  At this time, he doesn't exhibit any sign of inattentiveness or behavioral problems. D▉▉▉▉ appears to respond well to one to one interactions. His performance during this evaluation yielded greater results than reported school experiences.  Reported areas of concern are consistent with characteristics of ADHD.  However, medication is reported to result in limited improvement.  Nonetheless, D▉▉▉reports difficulty in attending to multisteps.  He also has difficulty with initiating and completing tasks.  Organization problems are also reported.

Further complications of abandonment and the death of the maternal figure in his life have further impeded D▉▉▉▉ emotional adjustment.  D▉▉▉▉ histories of abandonment and significant loss have impaired his sense of self work and feelings of belonging.  These feelings have incapacitated him in areas of independence, assertiveness and social savvy.  He is lost in a large class and would be overwhelmed in a population of aggressive acting out youngsters. He would benefit from a very small, highly structured program with activities designed to promote a sense of belonging and a feeling of some control.  He would benefit from a re-evaluation of current medication trials, individual, group and family therapy as well as specialized instruction in areas of academic deficits.  D▉▉▉▉ program should be success oriented with externalized prompting and organization.

Sincerely,

*Spencer Johnson*

Spencer Johnson, MD
Psychiatrist

72



*Making a Difference*

## INTERDYNAMICS, INC.
### *Evaluations and Therapy*

### <u>Social Work Evaluation Report</u>

**Student Name:** De███ W███    **DOB:** ███89    **Age:** 14
**Primary Language:** English    **Grade:** 9
**Parent/Guardian:** Marian Murphy (paternal grandmother)
**Address:** ████████████████████
**Telephone#** ████████████
**Referral Source:** Guardian
**Reason for referral:** De███ was referred for an evaluation due to increasing concerns regarding his educational placement.

## Developmental/Medical History

De███ was born of natural delivery at Howard University Hospital following his mother's full term pregnancy. Delivery was unremarkable, however De███ mother and father are reported to have a history of substance abuse involving crack cocaine. At two years old, De███ fell off a chair and was knocked unconscious for several minutes after hitting his head on the floor. He was observed overnight at Children's Hospital and released after x-rays revealed no significant damage. At twelve years old he was evaluated at the Educational Diagnostic Institute to assess his current level of cognitive functioning which revealed that De███ was functioning in the "average" range of intelligence as compared with his peers. He did test well below grade level however in basic arithmetic leading to a diagnosis of Mathematics Disorder. Recommendations included referrals for special education services, in school psychosocial counseling and a referral for a neuropsychological evaluation. De███ continues to take 50 mg. of Concerta daily as a treatment for ADHD and Allegra for allergies.

Ms. Murphy reports that De███ achieved all developmental milestones on time including crawling, sitting, walking and talking.

## Family History

## Household Composition

| Name | Age | Relationship | Occupation |
|------|-----|--------------|------------|
| Marian Murphy | 57 | grandmother | day care provider |
| Tamira Murphy | 30 | aunt | |
| Tanisha Murphy | 8 | cousin | |
| D█████ W█████ | 14 | self | |

D█████ lives in a four bedroom house with his grandmother, aunt and cousin where they've been for approximately nine years. With the exception of two brief periods, D█████ has been in the care of his grandmother since he was two months old due to his mother's inability to provide care for him. When D█████ was approximately eight years old he went to live with his mother after she convinced the grandmother that she was capable of taking care of him. D█████ returned to the grandmother's home after several months because of an investigation of the mother's house initiated by DC Child and Family Services. Additionally, D█████ was reportedly missing a lot of days from school during this time. At approximately twelve years old, D█████ went to live with his mother again and returned to the grandndmother's house after one semester due to his mother's inability to get him to school on a consistent basis. D█████ continued to maintain sporadic contact with his mother, staying with her occasionally overnight, until she passed away of breast cancer in August 2003 at the age of forty. There is no knowledge of her educational or work history.

D█████ father, Kevin Stevenson (38), lives in Lanham, Maryland and only recently began showing an interest in his well being. A reunification of sorts occurred during the funeral of D█████ mother. Mr. Stevenson had maintained distance between he and D█████ because of the circumstances under which D█████ was conceived. Apparently, Mr. Stevenson was involved in another relationship when he had an affair with D█████ mother. He continued to harbor feelings of resentment toward mother and child throughout D█████ young life. Mr. Stevenson has no other children and is in the process of getting married. He is a graduate of Roosevelt High School and completed three years in the Navy. He's returned to school to study electrical engineering and has a job with a construction company doing electrical work.

D█████ gets along well with all members of the household although he may have the best relationship with his aunt Tamira who has been sort of a big sister to him. He does chores including taking out the trash, cleaning his room and washing the family cars. He also cuts grass for some of the neighbors.

## Social/Behavior Characteristics

D█████ is described by Ms. Murphy as being shy and immature for his age. He doesn't have many friends and prefers playing with children who are younger than he is.

He enjoys playing video game and sports, particularly basketball.

74

## School History

D████ attended the first grade at Sacred Heart Elementary School where Ms. Murphy reports that he performed on grade level although there were frequent reports of being overactive. He attended the second grade at Nativity Catholic Academy where he was initially tested for ADHD due to ongoing reports of his inability to remain seated during class time and difficulties following instructions. D████ attended third grade at Rudolph Elementary School during a brief stay with his mother. Ms. Murphy reports that he had poor attendance, failed to complete most of his assignments and had difficulty remaining on task. He continued to attend Rudolph Elementary through the fifth grade with much of the same problems although he returned to live with his grandmother. In the sixth grade, D████ attended Birkshire Elementary School in Prince George's County while living with his mother, experiencing failing grades as a result of poor attendance. D████ returned to live with his grandmother after one semester, however Birkshire allowed her to transport him their every day from Washington,DC Ms. Murphy reports that he attended the seventh and eighth grade at Backus Middle School where he began to make some progress due to special education assistance received for math and English.

## Summary

D████ Wilkins is a fourteen year old African-American male with a history of academic problems related to a variety of factors including, but not limited to, unstable home life, inability to remain focused, poor self control and problems with mathematics.

D████ has experienced a great deal of trauma associated with several failed attempts to reunite with his biological mother. Her inability to provide a nurturing environment for him contributed to issues related to trust, anxiety, insecurity and lack of continuity regarding academic progress. There would have been a high degree of distractibility for him during those times due to the fragile nature of their relationship, thereby affecting his ability to concentrate in the classroom. Also, associated feelings related to her death such as sadness, anger, uncertainty and depression would have affected his progress as well. Additionally, until recently, D████ father hadn't displayed an interest in developing a relationship with him causing further emotional damage due to issues related to abandonment.

D████ could benefit from a small structured academic environment that has a therapeutic component to address ongoing issues related to grief and loss, developing appropriate coping skills,  as well as helping with forming a bond with his father. A previous recommendation regarding individual therapy should be adhered to weather it takes place in school or at an independent site. A neuropsychological evaluation is recommended to address possible concerns related to exposure to drugs inutero or any lingering effects of a head injury suffered when he was a toddler. Additionally, although he has the overall cognitive ability to succeed, he will continue to need special assistance with overcoming significant delays with mathematics.

Finally, this is a very crucial stage in D████████ development, adolescence, which will continue to present challenges regarding identity formation, peer pressure and academic achievement. All possible supports and interventions should be explored in order to assist him in becoming the most productive individual he can be.


James Thomas, MSW

8/19/04

Date

DW-07

# Law Office,
## Christopher N. Anwah, LLC

Attorneys and Counselors at Law

📁 **FILE**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)
December 18, 2004

1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048

**By Fax: (202) 442-5524**

Office of Mediation and Compliance
D.C. Public Schools
825 North Capitol Street, N.E.
Washington, D.C. 20002

        RE:    D██████ W██████
        DOB:  ██████789

Dear Sir/Ms.:

Our office is writing to inform you that the Settlement Agreement signed on June 24, 2004 gave DCPS fifteen (15) business days of the receipt of the last independent evaluation to review and to schedule an MDT/IEP meeting. Our office on September 5, 2004 provided Mr. Jack Schreibman, Esq., Attorney Advisor, copies of the independent evaluations for DCPS's review and to schedule an MDT/IEP; however, to date, DCPS has not contacted our office to provide us with a copy of its review of the independent evaluations and to provide us with a letter of invitation with three (3) dates for our consideration to schedule an MDT/IEP meeting. Therefore, DCPS has violated the Settlement Agreement. If you have any questions, please contact the undersigned staff personnel at either (202) 626-0040 or (202) 270-9156.

Thank you for your prompt attention and cooperation regarding this matter.

Sincerely,

*Annie R. Pressley*

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D██████ W██████

cc:    Client's file

# Law Office,
# Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Panya Monford, Esq.
    (MD)

1003 K Street, N.W.
Suite 500
Washington, D.C. 20001
Phone: (202) 626-0040
Fax: (202) 626-0048

## FACSIMILE  COVER  LETTER

DATE:
    December 18, 2004

TO:
    Office of Mediation and Compliance

COMPANY
    D.C. Public Schools

FAX NUMBER:
    (202) 442-5524

FROM:
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET _2_

MESSAGE: INFORMING OF VIOLATION OF SETTLEMENT AGREEMENT FOR
D███████ W██████ - DOB: ██/██/89

If there is any problem with this transmission, please call as soon as possible at (202) 626-0040

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the CHRISTOPHER ANWAH, ESQ. law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 626-0040 so that we can arrange for the retrieval of the original documents at no cost to you.

XMT REPORT

Dec. 19 2004 02:36AM

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|----------------|------------|------------|------|-------|--------|
| 01 | 202 442 5524 | Dec. 19 02:35AM | 01'12 | TX | 02 | OK |

Un to DCPS Mediation
+ Complaine — Violation
of Settlement Agreement
signed on 6/24/04 for
[redacted] [redacted].
AP

FILE

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
    (DC, MD, NJ)
Fatmata Barrie, Esq.
    (DC, FL)
Panya Monford, Esq.
    (DC)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

September 5, 2004

**By Fax: (202) 442-5098**

Mr. Jack L. Schreibman, Esq.
Attorney Advisor
DCPS Office of the General Counsel
825 North Capitol Street, N.E.
Washington, D.C. 20002

        RE:    D▮▮▮ W▮▮▮▮
        DOB:  ▮▮▮▮89

Dear Mr. Schreibman:

Our office is writing to submit the independent psychiatric and social history evaluations that have been completed for D▮▮▮ W▮▮▮▮, per the Settlement Agreement signed between DCPS and our office on June 24, 2004. DCPS in the Settlement Agreement agreed to convene an MDT meeting within fifteen (15) business days of the receipt of the independent evaluations, and to update D▮▮▮▮ IEP as warranted. Also, placement should be discussed and determined when the MDT team meet.

Therefore, we are requesting that DCPS review the independent evaluations and then contact the undersigned staff personnel to arrange for a mutual date and time for the scheduled MDT/IEP meeting for all parties concerned at either (202) 347-7026 or (202) 270-9156.

Thank you for your immediate attention and cooperation regarding this matter.

80

Sincerely,

Annie R. Pressley, J.D.
Law Clerk for Christopher Anwah, Esq.
Attorney for D███████ W██████

Attachments: (2)

cc:     Client's file

# Law Office,
# Christopher N. Anwah, LLC

Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)
Panya Monford, Esq.
   (MD)

Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE COVER LETTER

DATE:
    September 5, 2004

TO:
    Mr. Jack Schreibman - Attorney Advisor

COMPANY
    DCPS Office of the General Counsel

FAX NUMBER:
    (202) 442-5098

FROM:
    Christopher Anwah, Esq./Annie R. Pressley, J.D. - Law Clerk/Education Advocate

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET __10__

MESSAGE: SUBMISSION OF INDEPENDENT EVALUATIONS FOR D██████
██ W█████ - DOB: ██████89 AND REQUEST TO SCHEDULE MDT/IEP MEETING

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

DW-09

# CONFIDENTIAL
## HEARING OFFICER'S DETERMINATION

**STUDENT:** ~~Delante William~~    **DATE OF BIRTH:** ~~████████~~ 1989

**CASE NUMBER:**    2002-1501

**ADDRESS:** ~~████████████████████~~

**DATE OF HEARING:**    August 20, 2002

**PRESENT SCHOOL:**    IDEAL Public Charter School

**DATE OF FORM 6:**    NA

**DATE OF MOST RECENT DCPS IEP:**  NA

**DATE OF MOST RECENT DCPS PLACEMENT NOTICE:**  NA

**PRESENT AT THE HEARING:**

**DCPS:**

Quinne Harris-Lindsey          Attorney Advisor

**Student:**

Christopher Anwah, Esq.          Counsel for the parent

**STUDENT'S REPRESENTATIVE:**    Christopher Anwah, Esq.
**ADDRESS:**        1220 L. Street, N.W., Suite 700, Washington, D.C. 20002

**SCHOOL SYSTEM'S REPRESENTATIVE:**    Quinne Harris-Lindsey, Esq.
**ADDRESS:**  825 North Capitol Street, N.E. 9th Floor, Washington, D.C. 20002

## IN THE MATTER OF

D█████ W██████ (D.O.B. █████████, 1989)

### INTRODUCTION:

A Due Process Hearing was convened on August 20, 2002 at the District of Columbia Public Schools ("DCPS"), 825 North Capitol Street, N.E. Washington, D.C. 20002, concerning D█████ W█████. The hearing was held pursuant to a hearing request dated June 26, 2002, submitted by Christopher Anwah, Esq. Mr. Anwah represented the student at the Hearing. Quinne Harris-Lindsey represented DCPS at the Hearing.

### JURISDICTION:

The Hearing was held and this decision was written pursuant to the *Individuals with Disabilities Education Act* (I.D.E.A.), P.L. 101-476, as amended by P.L. 105-17, the *Rules of the Board of Education of the District of Columbia and the DC Appropriations Act, Section 145,* effective October 21, 1998.

### DUE PROCESS RIGHTS:

Mr. Anwah waived a formal reading of the due process rights.

### DOCUMENTS:

**On Behalf of DCPS:**

DCPS-01, Disclosure Letter dated August 14, 2002

**On Behalf of the Parent:**

KW-01 through KW-08, per Disclosure Letter dated August 13, 2002

### SUMMARY OF RELEVANT EVIDENCE:

The Hearing Request contends that the parent transferred D█████ to IDEAL Public Charter School ("IDEAL") from the Thurgood Marshall Middle School in Temple Hills, Maryland. She said that she gave the Co-Principal of IDEAL a copy of D█████ transfer along with a copy of a § 504 plan. D█████ records indicated that he had received special education services. However, D█████ did not receive special education services from IDEAL.

As a result a settlement agreement entered into February 28, 2002, DCPS agreed to complete a psycho-educational evaluation, speech and language evaluation and a social history assessment by March 25, 2002 and then convene a MDT team meeting. Additionally, if DCPS failed to conduct the evaluations, then DCPS agreed that it would fund independent evaluations.

84

✍ 004

DCPS failed to conduct the evaluations as agreed, so the parent obtained an independent speech and language evaluation and psycho-educational evaluation and gave a copy to DCPS on May 25, 2002. The social history assessment is still outstanding. Also, the psycho-educational evaluation recommended that either a neuropsychological or a psychiatric evaluation should be obtained.

At the Hearing, the parties discussed the status of the evaluations on the record and reached an agreement that DCPS shall complete the social history and psychiatric evaluations within Thirty (30) days from the date of this Hearing. Ten (10) days after receipt of the last evaluation, an MDT/IEP/Placement meeting will be convened and the team will develop an appropriate IEP, determine an appropriate placement and issue a Prior Notice of placement.

## FINDING OF FACT AND CONCLUSIONS OF LAW:

DCPS is obligated to ensure that all children with disabilities receive a Free and Appropriate Public Education ("FAPE") 34 C.F.R. §300.300. This obligation includes identifying children with disabilities and who may be in need of special education services. 34 C.F.R. §300.125. Additionally, DCPS is obligated for evaluating children in all areas of suspected disabilities 34 C.F.R. §300.320.

The Hearing Officer finds that D▬▬▬ was not evaluated as the parties had agreed. However, the Hearing Officer concurs with the agreement of the parties as being in the best interest of the student and therefore incorporates the terms thereof into this Hearing Officer's Determination.

## ORDER:

1. DCPS shall complete a social history and psychiatric evaluation within Thirty (30) days from the date of this Hearing. Ten (10) days after receipt of the last evaluation, an MDT/IEP/Placement meeting shall be convened and the team will develop an appropriate IEP, determine an appropriate placement and issue a Prior Notice of placement.

2. The parent reserves the right to claim compensatory education

3. The hearing Officer retains jurisdiction of this case and the parties may request an expedited hearing.

4. The parties shall cooperate with each other in scheduling evaluations and meetings and any delay caused by the parent in scheduling an evaluation shall extend the time for completing evaluations by the equivalent amount of time of the delay.

DCPS SPECIAL ED DEPT    ☑005

This is the final administrative decision in this matter. Appeals on legal grounds may be made to a court of competent jurisdiction within 30 days of the rendering of this decision.

Date  8/27/02

David R. Smith
Hearing Officer

8-23-02



# Law Office,
# Christopher N. Anwah, LLC
Attorneys and Counselors at Law

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

March 26, 2004

**By Fax: (202) 541-0573**

Mr. James Ricks
Principal
Village Learning Center Public Charter School
33 Riggs Road, N.E.
Washington, D.C. 20011

        RE:   D███ W████
        DOB:  ███/89

Dear Mr. Ricks:

Our office represents Ms. Marian Murphy and her son, D███ W████, in regards to D███ special education services. Prior to D███ registering at your school, a due process hearing was held on August 20, 2002 and the Hearing Examiner ordered that the D.C. Public School(DCPS) complete a social history and psychiatric evaluations within thirty (30) days from the date of his order. Also, that DCPS was to convene MDT/IEP-placement meeting within ten (10) days after the last evaluation was completed. After speaking with Ms. Murphy, she has informed us that she was not certain if DCPS had complied with that order. Further, that those evaluations, once completed, were to be forwarded to our office. We have reviewed D███ file in our office and we do not have any record that indicates that those evaluations were ever completed and forwarded to us.

Therefore, we are requesting that Village Learning Center Public Charter School ("Village") inform us as to the completion of those evaluations and to forward us copies by close of business Tuesday, March 30, 2004. In addition to those evaluations, please forward us a copy of D███ 2003/04 IEP. If you have any questions, please contact our office law clerk, Ms. Annie R. Pressley. Ms. Pressley can be reached at either (202) 347-7026 or (202) 270-9156.

87

Thank you for your immediate attention and cooperation regarding these matters.

Sincerely,

Christopher Anwah, Esq.
Attorney for D████ W████

cc:     Client's file

# Law Office,
# Christopher N. Anwah, LLC

**Attorneys and Counselors at Law**

Christopher N. Anwah, Esq.
   (DC, MD, NJ)
Fatmata Barrie, Esq.
   (DC, FL)

Federal District Building
1010 Vermont Avenue, N.W.
 Suite 600
Washington, D.C. 20005
Phone: (202) 347-7026
Fax: (202) 347-7108
Email: Lawoffcna@aol.com

## FACSIMILE  COVER  LETTER

**DATE:**
    March 26, 2004

**TO:**
    Mr. James Ricks - Principal

**COMPANY:**
    Village Learning Center Public Charter School

**FAX NUMBER:**
    (202) 541-0573

**FROM:**
    Christopher Anwah, Esq.

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET _2__

MESSAGE: Request for evaluations ordered by HOD for D█████ W██████ - DOB:███/89

If there is any problem with this transmission, please call as soon as possible at (202) 347-7026

### *** CONFIDENTIALLY NOTE ***

The pages accompany this facsimile transmission contain information from the IWEANOGE & ANWAH law offices which is confidential or privileged, or both. The information is intended to be for the use of the individual or entity named on this cover letter. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this facsimile in error, please notify us by telephone immediately at (202) 347-7026 so that we can arrange for the retrieval of the original documents at no cost to you.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **W** First **D** MI **A**

Student ID **00382703** Soc. Sec. No. Age: **14** Grade **9**

Gender ☑M ☐F Date of Birth **/89** Ethnic Group **African American**

Address

House No.   Street Name   Quadrant   Apartment # **Washington DC 20017**

☐ Non-attending

Attending School **Village Learning Ctr** Home School **Backus MS**

☐ Elem. ☐ Mid/JHS ☐ SHS ☐ CHS

Parent **Marion Murphy**

Address (if different from student): ☑Parent ☐ Guardian ☐ Surrogate

House No.   Street Name   Quad.   Apt. No.   City   State   Zip Code

Telephone: Home **202-823-1048** Work **202-423-8159**

## II. CURRENT INFORMATION

Date of IEP Meeting: **4/22/04**
Date of Last IEP Meeting: **11/5/04**
Date of Most Recent Eligibility Decision: **4/22/04**

Purpose of IEP Conference:
☐ Initial IEP  ☑ Review of IEP
☐ Requested Eval.  ☐ 3yr Re-Eval.

Indicate Level of Standardized Assessment **III**

(ADDENDA TO BE ATTACHED AS NEEDED)
Check the appropriate box(es)
☐ BEHAVIOR   ☐ TRANSPORTATION
☐ ESY        ☐ TRANSITION

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education (English and Math Proficiency Assessment) |
|---|---|---|---|---|---|
| Student | English | English | English | Native Lang | Oral Read/Written |
| Parent | English | English | English | Native Lang | Instrument: |
| Home | English | English | English | Native Lang | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING Gen Ed Spec Ed Other | FREQUENCY Hr. Min. DW/M | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks-mos |
|---|---|---|---|---|---|
| Specialized Instruction | | 5h W | Special Education Teacher | 4/22/2004 | 10 mos |
| Psychological Counseling | | 5 M W | Psychologist | 4/22/2004 | 10 mos |
| | | | | | |
| | | | | | |
| TOTAL | | 6.5 Hours Per Week | | | |

## V. Disability(ies)

**Learning Disability**

**LD**

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☑ 0-20%  ☐ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

**EB Mau** Spec Teacher

**Keesha Blythe / Keesha Blythe** DCPS Placement Specialist

**Marian Murphy / Marian Murphy** Parent

**DeMyra N. Gallo / DeMyra Gallo** English Teacher

☐ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in this IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature **Marian Murphy** Date **4/22/04**

District of Columbia Public Schools   05-02-2001   Division of Special Education   Appendix - A   IEP Page 1 of 4

90

Student Name ~~D_____ W_____~~  Managing School **Villiage Learning Ctr**  DCPS - ISP
Page 2 of 4

Student ID Number **D0382703**  DOB ____ 89  Attending School

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments:
Score(s) When Available  WIAT  **9/7/02**

### Academic Areas: (Evaluator) JENNIFER PENN
**Math Strengths:**
D____ is able to add & subtract

Math Cal.  **SS  79**

Math Res.  _____

**Impact of disability on educational performance in general education curriculum:**
Weaknesses in math impact his ability to
Participate in mainstream courses

See goal page: _____

Date: _____

**Reading Strengths:**

Rdg. Com  _____

Rdg. Basic  **SS = 98**

Written Ex.  **SS = 91**

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____

Date: _____

### Communication (Speech & Language) (Evaluator) _____
**Strengths:**

Score(s) When Available
Exp. Lang. ____ ____
Rec. Lang. ____ ____
Artic ____ ____
Voice ____ ____
Fluency ____ ____

**Impact of disability on educational performance in general education curriculum:**

Exp. Voc. ____ ____
Rec. Voc. ____ ____
See goal page: _____
Date: _____

### Motor/Health (Evaluator) _____
**Strengths:**

Score(s) /Results
When Available

_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____
Date: _____

### Social Emotional Behavioral Areas: (Evaluator) JENNIFER PENN
**Strengths:**
D____ is able to follow directions

Score(s) When Available
Via  93
PIa  114
TSa  103

**Impact of disability on educational performance in general education curriculum:**
Poor attending and social-relatedness
impact peer relation

See goal page: _____
Date: **5/6/02**

### Cognitive/Adaptive Behavior: (Evaluator) _____
**Strengths:**

Score(s) When Available

_____
_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____
Date: _____

### Prevocational Skills: (Evaluator) _____
**Strengths:**

Score(s) When Available

_____
_____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____
Date: _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix – A    IEP Page 2 of 4

91

| Student Name | ~~Dxxxx Wxxxxx~~ | | Managing School | | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 000 383703 | DOB | ~~189~~ | Attending School | VLCPcs | Page 3 of 4 |
| VIII. SPECIALIZED SERVICES | Additional Comments: | Area addressed by goal: Math | | | Goal Number | |

**ANNUAL GOAL: (including mastery criteria.)**

Dxxxx will demonstrate 1 years progress in applied math skills moving him from grade level to grade level through mastery of the following short term goals

Provider(s): General Ed and SPED Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| Multiply 1 digit by 2 digits — Multiply 2 digits by 3 digits with and without Regrouping with 70% accuracy | | Monthly |
| Divide by a 2,3, digit divisor with and without a Remainder with 80% accuracy | | Monthly |
| Solve simple word problems involving 1, 2, 3 step operation with 80% accuracy | | Monthly |
| Add, substract, like, and unlike fraction with 70% accuracy | | Monthly |
| complete fractional computations with 70% accuracy | | Monthly |
| Identify the place value of a number with 80% accuracy | | Monthly |
| Student will complete fractional computations with 70% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

(Portfolio)  Log  Chart  (Task)  (Documented Observation)  Report  Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name: ████ W████ | Managing School | | DCPS - IEP |
|---|---|---|---|
| Student ID Number: 000382703    DOB | Attending School VLCPCS | | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: |
|---|---|---|

Area addressed by goal: SOCiAL-Emotional

**ANNUAL GOAL: (including mastery criteria.)**

D█████ will develop appropriate attending and Social Relatedness skills

Provider(s): School counselor

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| — Attend to tasks without becoming frustrated | | |
| — Sit still during group activities | | |
| — Attempt tasks before responding "I can't" or "I don't know how" | | |
| — Attend to work time tasks until they are completed before moving on to another task | | |
| — Participate in group activities | | |
| — Demonstrating continuing growth in social interactions | | |
| — Accept the give and take of interactions with peers and adults | | |

**EVALUATION PROCEDURE(S)**

(Portfolio) (Log) Chart Test Documented Observation Report Other _____

| Student Name | [redacted] W[redacted] | Managing School | VLCPCS | DCPS - 164 |
|---|---|---|---|---|
| Student ID Number | 00382703 | DOB | [redacted] 89 | Attending School | | Page 4 of 4 |

### Additional Comments:

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?  Yes   No

Explanation for removal out of regular education classroom.

D[redacted] is unable to be academically successful in the general education classroom without proper support

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for seating:    None needed

Timing/Scheduling: Extended time
Setting: small group
Presentation: Repeat and Rephrase direction (written list of direction)
Response:
Equipment: Calculator, ruler

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I   Tested with non-disabled peers under standard conditions without accommodations.

Level II (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations.

Level V  Portfolio

Level III (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level IV (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

| | | | Modifications: |
|---|---|---|---|
| Reading | Physical/Sensory | Transition | Language Arts/English |
| Mathematics | Social Emotional | Vocational | Social Sciences |
| Written Expression | Physical Development | Independent Living | Biological & Physical Sciences |
| Other | | Speech/Language | Fine Arts |
| None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | |

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Maximum Inclusion → Combination General Education | Accept | None |
| General Education | reject | school failure |
| Out of General Education | reject | not LRE |

Modification(s)/Accommodation(s) to address the harmful effects:
Specialized Instruction & Psychological Counseling

Location for Services

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 4 of 4

94

*[signature: Marian Murphy]*

Received a

Copy of "The Caring For Our Students with Disabilities", a procedural Manual for Parents

Delivered at the Village Learning Center on  4/22/04

From

*[signature]*

NAME

April 22, 04

DATE

*[signature: Marian Murphy]*

Parent / Recipient

*[signature]*

Delivered by

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT ████ Will███    SCHOOL Villiage Learning    DATE: 4/22/04
Ctr

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| EB Men | EB Men | SPED Teacher |
| Keesha Blythe | Keesha Blythe | DCPS Placement Specialist |
| Marian Murphy | Mary Murphy | Parent |
| De'Myra N. Gallo | DeMyra N. Gallo | English Teacher |

The MDT agrees that D████ continues
to be eligible for special education services
as a child with a Learning Disability

→ Services    Specialized Instruction 16hrs/W
             Psychological Counseling .5 min/W

→ Combination General Education
→ Level III
→ Accommodations: extended time, small group
   repeat and rephrase directions, calculator,

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

MEETING DATE: 4/27/04

STUDENT: D█████ W████████    SCHOOL: Villiage Learning Ctr

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| EBMlou | EBMen | Dir of SPED / SPED Teacher |
| Keesha Blythe | Teesha Blythe | DCPS Placement Specialist |
| Marian Murphy | Marian Murphy | Parent - Legal Guardian |
| DeMyra N. Gallo | DeMyra N. Gallo | English Teacher |

The purpose of today's meeting is to discuss
current progress and review IEP.
Everyone present was introduced
The parent was provided a copy of the procedural
safeguards
Ms Murphy, grandmother is concerned with
D█████ being able to formulating sentences.
In his previous IEP, D█████ spelling & reading scores
are within the expected range.
Ms Gallo, reports that D█████ reads very

THE PARENT (IS PRESENT) IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT D█████ W████████

CONTINUES TO BE ELIGIBLE FOR SPECIAL EDUCATION

IS TO BE EXITED FROM SPECIAL EDUCATION

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## WASHINGTON, DC

MDT REFERRAL DATE: _____    MULTIDISCIPLINARY TEAM (MDT)    Page: ___ of ___
CONTINUATION MEETING NOTES
MEETING TYPE: __MDT__

STUDENT: D____ W____    SCHOOL: Village Learning Ctr    DATE: 4/22/04

well. D____ has difficulties with his writing
D____ is capable of doing the work.
When you sit with him to do the work,

one on one

D____ is able to perform the task
~~mumumumumumum~~ D____ would
benefit from ~~mumumum~~ repeated/listed directions.

help Delonta

To become more organized, he could use
an assignment notebook to list daily
tasks and to be reviewed by classroom
teacher daily. D____ is also diagnosed w/
ADHD and takes Concerta 54mg daily
The MDT agrees that D____ continues to be
eligible for Special Education Services
as a child with a Learning Disability