UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| FRIENDSHIP EDISON PUBLIC CHARTER SCHOOL COLLEGIATE CAMPUS, | : : : : | | |
| Plaintiff, | : : | Civil Action No.: | 05-2109 (RMU) |
| v. | : : | Document No.: | 8 |
| MARIAN MURPHY, as next friend of the minor child, *et al.*, | : : : | | |
| Defendants. | : | | |

<u>MEMORANDUM OPINION</u>

G<small>RANTING THE</small> D<small>EFENDANT'S</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small>[1]

## I.   INTRODUCTION

The plaintiff, Friendship Edison Public Charter School ("Edison"), brings this action against Marian Murphy and her child, D.W. (collectively, "the defendant") pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"). The plaintiff asks the court to reverse a hearing officer's decision ("HOD") that the plaintiff failed to provide D.W. with a free appropriate public education ("FAPE"). The defendant moves to dismiss, arguing that the plaintiff has not shown that the HOD is wrong. Because the plaintiff has not alleged facts sufficient to show that the hearing officer erred in his decision, the court grants the defendant's motion to dismiss.

---

[1] Defendants Marian Murphy and D.W. style their motion as a motion to dismiss for failure to state a claim. Because the court considered materials outside the pleadings in rendering the present decision, the court treats the defendants' motion to dismiss as a motion for summary judgment. F<small>ED</small>. R. C<small>IV</small>. P 12(b); *Fraternal Order of Police Dep't of Corrs. Labor Comm. v. Williams*, 375 F.3d 1141, 1144 (D.C. Cir. 2004).

## II. BACKGROUND

### A. Factual History

The plaintiff is a D.C. public charter school. Compl. ¶ 1. Defendants Marian Murphy and her sixteen-year old child D.W. are residents of the District of Columbia. *Id.* ¶ 3. D.W. is a student with a learning disability, eligible to receive special education services pursuant to the IDEA.[2] *Id.* ¶¶ 5-6. D.W. attended Edison during the 2004-2005 school year. *Id.* ¶ 5. His individualized education program ("IEP")[3] provided that he was to receive six hours of specialized instruction and 30 minutes of psychological counseling per week in a combination setting[4] of general and special classes, Admin. R. Ex. 3 ("HOD") at 3. As a result of an HOD dated March 16, 2005, D.W. transferred out of Edison to a private special education school before the 2004-2005 school year ended. Compl. ¶ 7. On June 30, 2005, defendant Murphy

---

[2] The parties do not dispute that D.W. is eligible to receive special education services.

[3] An Individualized Education Program ("IEP") "sets forth the child's educational level, performance, and goals," and "is the governing document for all educational decisions concerning the child." *Bd. of Educ. of Cmty High Sch. Dist. No. 218 v. Ill. State Bd. of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996); *see also Spilsbury v. Dist. of Columbia*, 307 F. Supp. 2d 22, 25 (D.D.C. 2004) (stating that the IDEA requires that an IEP "include a statement of needs, services, learning aids, and programs that should be made available to the student"). Once the IEP team develops the IEP, the school system must provide an appropriate educational placement that comports with the IEP. *Spilsbury*, 307 F. Supp. 2d at 25.

[4] Neither party defines "combination setting" or "inclusion setting," although the parties assert much importance in the distinction between the two. The plaintiff, indeed, emphasizes that D.W. informed the hearing officer that he did not know the difference between an inclusion setting and a combination setting. Compl. ¶ 11. Despite inadequate briefing on the matter, the court is satisfied to proceed with the understanding, consistent with the HOD, that D.W.'s IEP stipulated that he receive specialized instruction and psychological counseling "in a combination setting of general education and special education classes." Admin. R. Ex. 3 ("HOD") at 3.

requested a due process hearing, maintaining that the plaintiff failed to provide D.W. with the services listed in his IEP.  *Id.* ¶ 8.

At a September 13, 2005 due process hearing, the plaintiff produced two witnesses.  *Id.* ¶ 9.  The special education director of Edison and the 2004-2005 special education coordinator both testified that D.W. received special education services in an inclusion setting.[5]  *Id.*  The plaintiff's witnesses further testified that an independent contractor who no longer worked with Edison provided the services to D.W.  *Id.* ¶ 10.  Although the independent contractor allegedly retained the encounter tracking forms,[6] or "contact forms," when it completed its contractual obligations at the end of the 2004-2005 school year, the special education director stated that the forms documenting the services provided to D.W. were faxed to defense counsel.  *Id.* ¶ 9.  *Id.*  Defendant's counsel, however, denied receiving the forms.  HOD at 5.

At the due process hearing, D.W. also testified about the condition of the classroom and the services he received from his teachers.  Def.'s Mot. to Dismiss ("Def.'s Mot.") at 7.  He stated that he received services "once or twice" at Edison, HOD at 4-5, and testified that he did not see his related service providers, Def.'s Mot. at 7.

On September 28, 2005, the hearing officer issued an HOD.  In the HOD, the hearing officer relied heavily on D.W.'s testimony to conclude that the plaintiff failed to provide the required services to D.W.  HOD at 4-6.  Consequently, he ordered the plaintiff to convene a meeting to discuss compensatory education.  *Id.* at 5.

---

[5]  *See* note 4, *infra*.

[6]  Encounter tracking forms, or "contact forms," verify the performance of services provided to a student.  HOD at 4.

### B.   Procedural History

On October 28, 2005, the plaintiff brought suit against the defendants and the District of Columbia, seeking to reverse the HOD.  Compl. at 5.  On December 19, 2005, the defendant moved to dismiss, asserting that the plaintiff has not shown that the HOD is incorrect.  Def.'s Mot. at 1.  The plaintiff opposes the motion, arguing that the hearing officer erred in requiring Edison to produce the contact forms and in failing to consider all the evidence presented by Edison.  *See* Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n").  On September 5, 2006, the court granted the District of Columbia's motion to dismiss on the grounds that the district is not a proper party to this action.  Mem. Op. (Sept. 5, 2006).

### III.   ANALYSIS

### A.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## B. The Court Grants the Defendant's Motion to Dismiss

The defendant moves to dismiss on the grounds that the plaintiff has failed to prove that the HOD is wrong.[7]  Def.'s Mot.  The plaintiff challenges this motion by stating that the hearing officer erred in requiring it to produce the contact forms and in failing to consider all the evidence presented by the plaintiff.  *See generally* Pl.'s Opp'n.  As a result, the plaintiff argues that the court should reverse the HOD.  *Id*.  Because the plaintiff has not presented facts that would enable a reasonable jury to find that the HOD is wrong, the court grants the defendant's motion.  *Greene*, 164 F.3d at 675.

### 1. Legal Standard for Review of a Hearing Officer's Determination under the IDEA

A court reviewing a challenge to an HOD under IDEA § 1415 must first determine whether the school has complied with the procedures set forth in the IDEA.[8]  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Winchester Co. v. Rowley*, 458 U.S. 176, 206 (1982).  Next, the court must decide whether the IEP developed through the IDEA's procedures is reasonably calculated to enable the child to receive educational benefits.  *Id*.  The party challenging the

---

[7] The court notes with disapproval the poor quality of both parties' filings.  First, the plaintiff repeatedly refers to the defendant improperly.  *See* Pl.'s Opp'n at 1 (entitled "Memorandum in Opposition to District of Columbia's Motion to Dismiss," rather than "Memorandum in Opposition to Murphy's Motion to Dismiss"); Pl.'s Opp'n at 7 (referring to defendant D.W. as "she").  Second, the court notes the defendant's failure to cite any case law in the argument portion of its motion to dismiss.  Indeed, the only case law cited relates to the court's standard of review of a motion to dismiss.  The court reminds the parties that it is not required to accept unsupported allegations or "legal conclusions cast as factual allegations."  *Scott v. England*, 264 F. Supp. 2d 5, 7 (D.D.C. 2002) (citing *Tulare County v. Bush*, 306 F.3d 1138, 1142 (D.C. Cir. 2002)).  The court fully expects counsel to submit work product befitting of pleadings in a federal court.  *See e.g., Bradshaw v. Unity Marine Corp., Inc.*, 147 F. Supp. 2d 668, 670 (S.D. Tex. 2001) (castigating counsel for the "utter dearth of legal authorities in their briefing").

[8] The parties in this case do not challenge the procedural aspects of the HOD.

administrative decision bears the burden of persuading the court by a preponderance of evidence that the hearing officer was wrong. *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988).

In reviewing administrative decisions under the IDEA, the court reviews the records of the administrative proceedings and may also hear additional evidence at the request of the parties. 20 U.S.C. § 1415(i)(2)(C). The court may grant any relief it determines is appropriate. *Id*. The standard of review under the IDEA, however, is less deferential than that applied in traditional administrative review cases. *Kerkam*, 862 F.2d at 887; *Kroot v. Dist. of Columbia*, 800 F. Supp. 976, 981 (D.D.C. 1992). Although the court must give due weight to the administrative proceedings, its decision ultimately should be an "independent [one] based on a preponderance of evidence." *Rowley*, 458 U.S. at 206. Still, the court should not substitute its own notions of sound educational policy for those of the school authorities, *Rowley*, 458 U.S. at 206, and it must consider the factual findings from administrative proceeding to be *prima facie* correct. *Id*. But, "a hearing decision 'without reasoned and specific findings deserves little deference.'" *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005).

    **2.**    **The Plaintiff has Not Alleged Facts Sufficient to Prove that the HOD is Wrong**

The hearing officer concluded that the plaintiff failed to sustain its burden of proof for primarily two reasons. First, the plaintiff did not supply the contact forms, which would "verify the performance of related services and [are] the best evidence to support the performance of services." HOD at 4. Second, the hearing officer found D.W.'s testimony to be clear, credible and probative, outweighing the evidence presented by the plaintiffs. *Id.* at 5.

The plaintiff contends that the hearing officer improperly required the plaintiff to produce contact forms for services provided to D.W. Compl. ¶ 15. The hearing officer deemed the

contact forms to be the "best evidence," but the plaintiff claims that no statute requires it to maintain the forms, that they were provided to opposing counsel, and that the hearing officer exceeded his authority in demanding that the plaintiff produce them. *Id*.

Similarly, the plaintiff maintains that the hearing officer erred in relying "solely on the testimony of [D.W.] in his determination." *Id*. ¶ 19. The plaintiff maintains that it produced two witnesses at the due process hearing to testify that it provided a FAPE to D.W., and that the hearing officer failed to consider all the evidence presented. Pl.'s Opp'n at 2-5. The defendant challenges both of the plaintiff's arguments by charging that the plaintiff has not met its burden of showing that the hearing officer erred in issuing the HOD. Def.'s Mot. at 4-8. The court now reviews the HOD within the ordinary summary judgment framework, but it employs the appropriate non-deferential standard of review dictated by the IDEA. *Reid v. Dist. of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005).

   a.   **The Hearing Officer did Not Err in Considering the Absence of Contact Forms**

In response to the hearing officer's finding that the contact forms were the "best evidence" of the plaintiff's performance of services, the plaintiff advances several reasons for its failure to supply the contact forms. First, the plaintiff argues, without any reference to legal authority, that the contact forms are "records that the school is not required to maintain."[9] Pl.'s

---

[9] The court notes that the plaintiff does have some statutory obligation to maintain student records. The IDEA provides that any "local educational agency that receives assistance under this subchapter shall establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed . . . [a]n opportunity . . . to examine all records relating to such child." 20 U.S.C. §1415(b)(1). Indeed, LEAs must provide a parent access to educational records upon request. 20 U.S.C. § 1415(d)(2)(D); D.C. Mun. Regs. 5, § 3021.1. Therefore, the plaintiff's blanket argument that it is under no legal obligation to maintain student records is unpersuasive.

Opp'n at 3.  Next, the plaintiff explains that an independent contractor who no longer works with Edison provided the services to D.W. and that the independent contractor retained possession of the contact forms when the contract term ended.  Compl. at 4.  The plaintiff argues that because D.W. transferred out of Edison before the end of the 2004-2005 school year and the plaintiff allegedly sent a copy of D.W.'s records to defense counsel, the plaintiff had no need to keep a copy of the records.  *Id.*  In addition, the plaintiff asserts that "it is not unlikely that the [school] would experience staff changes and be unable to maintain all the student's records."  Pl.'s Opp'n at 4.

Although the plaintiff characterizes the HOD as "requiring Edison to produce [the contact forms] which by law it is not required to maintain," Pl.'s Opp'n at 3, the HOD makes no such requirement.  To the contrary, the HOD found it "[o]f telling significance" that the plaintiff could not produce the contact forms.  HOD at 4.  The hearing officer recognized and considered the evidence presented by the plaintiff's witnesses and found that "[notwithstanding the dispute over the availability of the contact forms], the testimony of the petitioner, D.W., was clear, credible and probative."  *Id.* at 5.  Thus, the hearing officer concluded that D.W.'s testimony established by a preponderance of the evidence that D.W. had not received a FAPE in accordance with his IEP.  *Id.* at 4.

The hearing officer is "entitled to make such decisions regarding the weight to give [evidence]," *Iapalucci v. Dist. of Columbia*, 402 F. Supp. 2d 152, 170 (D.D.C. 2005) (citing *Shoenbach v. Dist. of Columbia*, 309 F. Supp. 2d 71 (D.D.C. 2004)), including whether or not to consider the school's failure to produce contact forms.  The court, therefore, concludes that the hearing officer did not err in stating that the contact forms were the "best evidence" that the

9

plaintiff provided D.W. with a FAPE, or in concluding that the plaintiff failed to meet its burden of proof.

### b.    The Hearing Officer did Not Err in Relying on D.W.'s Testimony

Next, the plaintiff alleges that the hearing officer erred in failing to consider all the evidence and testimonies presented at the due process hearing. Compl. at 5; Pl.'s Opp'n at 5. The plaintiff produced two witnesses involved in supervising the provision of services to D.W. Pl.'s Opp'n at 5; HOD at 4-5. These witnesses testified that D.W. received services as required by his IEP. *Id*. The HOD notes, however, that the first witness did not actually observe these services being provided to D.W. HOD at 5. As to the second witness, the HOD notes his testimony that D.W. received services in an inclusion setting, but also notes that the service provider itself did not testify. *Id*. The hearing officer thereafter concluded that this testimony was insufficient to sustain the plaintiff's burden of proof. *Id.* at 5.

Because the HOD discusses the evidence produced by the witnesses, the court cannot conclude that the hearing officer failed to consider the evidence as the plaintiff alleges. *Iapalucci*, 402 F. Supp. 2d at 170 (concluding that it was impossible to conclude, based upon the record, that a hearing officer "ignored" the plaintiff's witnesses' testimony, and it was "just as likely" that the hearing officer relied heavily on other testimony). In fact, the HOD itself demonstrates that the hearing officer did consider the plaintiff's evidence, but he found D.W.'s testimony to be more persuasive.[10] The hearing officer concluded that "notwithstanding [the

---

[10]    The plaintiff challenges D.W.'s testimony by pointing out that D.W. did not have enough knowledge to distinguish inclusion services and non-inclusion services. *Id.* Regardless of D.W.'s knowledge of the specifics of special education services, the HOD indicates that D.W. testified that he did not receive services at the required frequency or in separate special classes as required by his IEP. HOD at 4.

evidence produced by the plaintiff,] [t]he student unequivocally declared he had only received special education services once or twice" at Edison.  HOD at 4-5.

Accordingly, the HOD evidences that the hearing officer balanced the evidence presented by both parties in reaching his conclusion.  HOD at 4-5.  The hearing officer need not provide an explanation for why he or she gives more weight to certain evidence than to contradictory evidence.  *Iapalucci*, 402 F. Supp. 2d at 170 (citing *Shoenbach*, 309 F. Supp. 2d at 71).  This is because "[t]he Hearing Officer – as opposed to this Court – has an opportunity to hear testimony in person, examine the demeanor of the witness and reactions of the participants, and can bring immeasurable experience and expertise in this specialized area."  *Id*.  As a result, the court concludes that the hearing officer did not err in relying on D.W.'s testimony in issuing the HOD. *Id*. at 170-171 (deferring to the hearing officer's choice to give weight to certain evidence where "the HOD [was] replete with references by the Hearing Officer to the evidence offered by the [party challenging the HOD]," evidencing the hearing officer's consideration of all the evidence presented).

Upon consideration of the administrative record and the findings of the hearing officer, the court concludes that the plaintiff has not alleged sufficient facts to prove, by a preponderance of the evidence, that the HOD is wrong.  *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988) (stating that the party challenging an HOD must prove by a preponderance of evidence that the HOD is incorrect).  Accordingly, the court grants the defendant's motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 21st day of September, 2006.

RICARDO M. URBINA
United States District Judge
